■ AMERICAN HOME ASSURANCE COMPANY, Appellant, v GEMMA CONSTRUCTION COMPANY, INC., et al., Respondents. [713 NYS2d 48] —Order, Supreme Court, New York County (Barry Cozier, J.), entered April 6, 1999, which denied the motion of plaintiff American Home Assurance Company (American Home) pursuant to CPLR 3212 for partial summary judgment, and pursuant to CPLR 3211 (a) (7) and 3212 to dismiss the counterclaims asserted against it, unanimously reversed, on the law, with costs, plaintiff's motion granted and the matter remanded for further proceedings, including the calculation of interest.

American Home commenced this action for breach of indemnity agreements by Gemma Construction Company, Inc. (Gemma), IVS Construction Company (IVS), and various individuals affiliated with these companies. American Home had agreed to act as surety for Gemma on a number of public projects, some of which were connected with the School Construction Authority, including the Margaretville sewage treatment plant, the P.S. 171-Early Childhood Center 2 project, the Liberty High School project, the P.S. 721/Hewlitt-Woodmere project, the P.S. 54 project, and the P.S. 121/225 project. Defendant IVS was Gemma's subcontractor on several of these projects and also separately contracted to perform work on the Enid Haupt Pavilion at the New York Botanical Gardens. As surety, American Home issued performance bonds, labor and material payment bonds and discharge of lien bonds, naming Gemma and/or IVS as principal and the project owners and other entities as obligees. In June of 1994 Gemma and its principals (the Carchiettas) executed a General Agreement of Indemnity with American Home. In July of 1994 Gemma, IVS and its sole employee, defendant Sargeant, signed a second agreement containing identical terms and conditions. As relevant, both agreements provide:

"THIS AGREEMENT is made by the Undersigned in favor of the American International Companies for the purpose of indemnifying them from all loss and expense in connection with any Bonds of any Principal defined below, for which any of the American International Companies now is or hereafter becomes Surety.

"In consideration of the execution of any such Bonds for Principal and as an inducement to such execution or continuation of suretyship by Surety, the Undersigned, jointly and severally, agree as follows:

"DEFINITIONS: Where they appear in this agreement, the following terms shall be defined in this paragraph:

"**Principal:** Any one, combination of, or all of the Undersigned, or any present or future subsidiary or any subsidiary of a subsidiary of the Undersigned, whether alone or in joint venture with others not named herein, and any corporation, partnership or person upon written request of any of the Undersigned.

"**Bond:** Any and all bonds, undertakings or instruments of guarantee and any renewals or extensions thereof by Surety.

"**Surety**: American Home Assurance Company * * *.

"INDEMNITY TO SURETY: Undersigned agree to pay to Surety upon demand any premium due and all loss and expense, including attorney fees, incurred by Surety by reason of having executed any Bond. An itemized statement of loss and expense incurred by Surety, sworn to by an officer of Surety, shall be prima facie evidence of the fact and extent of liability of Undersigned to Surety in any claim or suit by Surety against Undersigned. Separate suits may be brought under this agreement as causes of action accrue, and the pendency or termination of any such suit shall not bar any subsequent action by Surety.

"GENERAL PROVISIONS:

"1. Assent by Surety to changes in any Bond or refusal so to assent shall not release or affect the obligations of Undersigned to Surety.

"2. Surety shall have the right to decline to execute any Bond."

On December 23, 1996, the New York City Department of Environmental Protection (DEP), the owner of the Margaretville project, notified Gemma that it intended to declare the contractor in default for lack of progress in completing the job. Gemma requested to assign the remaining work to another contractor, but DEP found that Gemma's proposed assignee lacked the necessary experience. However, the agency suggested that a default could be avoided by Gemma's transfer of the project to a qualified contractor. Thereafter, Gemma's president, Fred Carchietta, advised American Home, by letter dated

January 19, 1997, that it was experiencing cash flow problems and requested funding to complete its construction projects. Consequently, at the suggestion of DEP, plaintiff entered into a written agreement with Gemma, the Carchiettas, the DEP and Parsippany Construction Co., Inc., whereby the contract for the Margaretville project was assigned from Gemma to Parsippany.

On March 26, 1997, Gemma and the Carchiettas entered into another contract with plaintiff under which American Home was to supply Gemma with up to $100,000 in financing to finish the Liberty High School project and $400,000 to complete the P.S. 171 project, both of which were near completion. Because the P.S. 54 and P.S. 121 projects were only in the early stages of construction, Gemma agreed to assign those contracts to other contractors. American Home agreed to provide Gemma with up to $175,000 per month to cover its overhead on the foregoing four projects, along with the P.S. 721 project and another project, the Newburgh project. Plaintiff also offered a financial incentive to the Gemma defendants to limit or reduce their obligation to American Home.[1]

Gemma agreed to supply American Home with assignments of proceeds on the other bonded projects except for the Newburgh project, which proceeds were to be placed in a separate trust fund account in the name of American Home and used to pay for the labor and materials that had been expended on the various undertakings.

Gemma was unable to complete the Liberty or P.S. 171 projects with the level of financing that it had claimed to be adequate[2] and it did not assign the P.S. 54 and P.S. 121/225 proj-

---

1. The incentive provided: "If the loss sustained by American Home on all of the projects bonded by American Home on behalf of Gemma is less than $3,750,000.00, then American Home will release all of the indemnitors, Gemma and the individual guarantors, on the indemnity obligations. If American Home's losses are between $3,750,000.00 and $4,500,000.00 then the indemnitors will be responsible only to pay 70% of the losses incurred by American Home greater than $3,750,000 and up to $4,500,000.00. If American Home's losses are greater than $4,500,000.00 then the indemnitors will be responsible for all of American Home's losses, dollar for dollar, without any release of indemnity. 'Losses' shall mean the cumulative total of all those payments (including the funds advanced hereunder) made by American Home out of its own funds to permit the performance and completion of the work Gemma is obligated to perform under each of the several projects bonded by American Home."

2. Plaintiff provided Gemma with more than $130,000 on the Liberty project and more than $1,800,000 on the P.S. 171 project, pursuant to Gemma's request.

ects by the agreed-upon date of May 15, 1997.[3] American Home's suit for breach of the indemnity agreements alleges that it has sustained a loss of $7,129,638.96 on the bonded projects, for which the defendants are jointly and severally liable. In support, American Home submitted copies of the payment drafts from the trust account, lists referencing each of the checks paid on the projects, and monies recovered on each project.

Defendants Gemma and the Carchiettas admitted execution of the agreements and issuance of the bonds, but interposed the following affirmative defenses: (1) failure to state a cause of action; (2) neglecting to annex an itemized and sworn statement of loss and expenses; (3) breach by plaintiff of its duty to mitigate losses and perform its contractual obligations in good faith; (4) estoppel arising out of American Home's conduct; (5) unmitigable losses less than $3,750,000; (6) gross negligence by plaintiff in paying claims under the bonds; and (7) unreasonable refusal to allow Gemma to substitute another surety on the P.S. 54 and P.S. 121/225 projects, plus one other project, thereby preventing the contractor from substantially limiting its losses on those jobs and ultimately forcing it out of business.

The last affirmative defense raised by Gemma and the Carchiettas was also denominated as a first counterclaim. The second counterclaim stated that because of the alleged improper actions of plaintiff, defendants were unable to meet certain construction loan payments to European American Bank (EAB). Defendants IVS and Sargeant raised two affirmative defenses: (1) lack of personal jurisdiction; and (2) fraud in the inducement of the execution of the Indemnity Agreement. These defendants also counterclaimed for $10 million for American Home's refusal to honor and perform its obligations under the various bond agreements.

In the order appealed, plaintiff moved for partial summary judgment, seeking $7,129,638.96 for defendants' breach of the indemnity agreements. The trial court denied plaintiff's motion and its request to dismiss defendants' counterclaims.

We reverse. Defendants do not dispute that they executed the indemnity agreements or the terms thereof, and, apart from their conclusory accusations of bad faith and other purported improprieties, there is no evidence that the surety acted improperly. Indemnity agreements such as the ones at issue in this case are consistently enforced (*see, National Union*

---

3. The P.S. 54 project was assigned on January 8, 1998 with an anticipated loss to plaintiff of at least $2,276,815.20. The P.S. 121/225 project was assigned on the same date with no expected loss to American Home.

*Fire Ins. Co. v Worley,* 257 AD2d 228; *National Union Fire Ins. Co. v Robert Christopher Assocs.,* 257 AD2d 1; *Acstar Ins. Co. v Teton Enters.,* 248 AD2d 654; *Aviv Knitwear Corp. v Greiner Maltz Co.,* 246 AD2d 565, 566; *National Union Fire Ins. Co. v Clairmont,* 231 AD2d 239, *lv dismissed* 92 NY2d 868; *International Fid. Ins. Co. v Spadafina,* 192 AD2d 637; *General Acc. Ins. Co. v Merritt-Meridian Constr. Corp.,* 975 F Supp 511 [SD NY]).

Defendants derived the benefit of plaintiff's bonds and other services, obtained at substantial financial cost to American Home, and their responsibilities are governed by their agreement to indemnify plaintiff against "all loss and expense, including attorney fees, incurred by Surety by reason of having executed any Bond" (*see, National Union Fire Ins. Co. v Robert Christopher Assocs., supra,* at 3, 11; *General Acc. Ins. Co. v Merritt-Meridian Constr. Corp., supra,* at 516). By submitting the indemnity agreements, along with a sworn itemized statement of loss and expense of $7,129,638.96, further supported by copies of payment drafts in that same amount, plaintiff demonstrated its *prima facie* entitlement to recovery thereupon (*see, Kornblith v Ostrau,* 252 AD2d 572; *International Fid. Ins. Co. v Spadafina, supra,* at 639).

We find no merit to any of the defendants' affirmative defenses or counterclaims, and the fact that defendants have not yet been afforded discovery does not preclude their summary dismissal (*see, Chemical Bank v PIC Motors Corp.,* 58 NY2d 1023, 1026). With respect to Gemma's first and second affirmative defenses, the indemnity agreement was a valid basis for plaintiff's action, and, contrary to defendant's assertion in support of the second affirmative defense, plaintiff had provided Gemma with an itemized and sworn statement of loss and expenses. We also dismiss Gemma's third, fourth, fifth and sixth affirmative defenses. Defendants initiated, approved and co-signed virtually all of the expenses and excess completion costs that they now challenge, and "[c]onclusory allegations of bad faith are insufficient to defeat a motion for summary judgment in favor of a surety seeking to enforce an indemnification agreement" (*General Acc. Ins. Co. v Merritt-Meridian Constr. Corp., supra,* at 518; *see also, International Fid. Ins. Co. v Spadafina, supra,* at 639; *Caplan v Unimax Holdings Corp.,* 188 AD2d 325 [as defendants received all the benefits that had been promised to them, there is no claim "for breach of an implied covenant of good faith and fair dealing"]).

There is no evidence that plaintiff did not attempt to mitigate damages (*see, Acstar Ins. Co. v Teton Enters., supra,* at

655). Plaintiff established the amount of its losses and expenses by submitting proof of payment in amounts that defendants have never contested. Further, defendants have provided no evidence that another surety would have arranged to finish any project for less than American Home.

With respect to the claim that plaintiff unreasonably disallowed Gemma to substitute another surety on several of the projects, the record indicates that it was not plaintiff, but the DEP, in its capacity as the owner of the Margaretville project, that insisted upon the assignment to Parsippany under threat of default. Furthermore, Gemma, rather than being coerced into making any concessions by plaintiff, actively sought the financial assistance of American Home. The record reveals that the surety did everything possible to accommodate the contractor.

Gemma's second counterclaim asserts that plaintiff is responsible for Gemma's inability to meet its financial obligation to EAB. However, consequential losses are, under New York law, "generally not recoverable under a labor and materials payment bond" (*QDR Consultants & Dev. Corp. v Colonia Ins. Co.*, 251 AD2d 641, 643, *lv denied* 92 NY2d 814).

We also reject both of the affirmative defenses raised by IVS and Sargeant. There is no question that plaintiff has personal jurisdiction over these defendants, and there is no evidence of fraud in the inducement of the execution of the indemnity agreement between these defendants and American Home. The essential elements of an allegation of fraud are the false representation of a material existing fact, scienter, deception and injury (*see, New York Univ. v Continental Ins. Co.*, 87 NY2d 308, 318; *National Union Fire Ins. Co. v Worley, supra*, at 233; *National Union Fire Ins. Co. v Robert Christopher Assocs., supra*, at 9). Here, defendants' counterclaim is not supported by evidence of plaintiff's specific material misrepresentations upon which they purportedly relied to their detriment.

In sum, we grant plaintiff's motion for partial summary judgment, and its application to dismiss all of the affirmative defenses and counterclaims asserted against it. Concur—Rosenberger, J. P., Mazzarelli, Ellerin, Lerner and Friedman, JJ.