LUMBERMENS MUTUAL CASUALTY
INSURANCE COMPANY,
Plaintiffs,

v.

DAREL GROUP U.S.A. INC.
and Freddy Alverado,
Defendants.

No. 02CIV.2736 CMGAY.

United States District Court,
S.D. New York.

March 18, 2003.

Michael P. O'Connor, New York City, for Plaintiffs.

MEMORANDUM DECISION AND OR-
DER GRANTING PLAINTIFF'S
MOTION FOR SUMMARY JUDG-
MENT AND DENYING DEFEN-
DANTS' CROSS–MOTION TO DIS-
MISS

MCMAHON, District Judge.

Plaintiff Lumbermens Mutual Casualty Company ("Lumbermens") brings this action to recover under a bond it executed on behalf of defendants Darel Group U.S.A., Inc. ("Darel Group") and Freddy Alverado,[1] and an indemnity agreement between plaintiff and defendants that accompanied the bond. Plaintiff moves for summary judgment under Rule 56 of the Federal Rules of Civil Procedure. Defendants cross-move to dismiss the case for lack of subject matter jurisdiction.[2]

For the following reasons, plaintiff's motion is granted and defendants' motion is denied.

## FACTS

Lumbermens is an Illinois Corporation licensed to do business as a surety in the state of New York. [Plaintiff 56.1 Statement ¶ 1]. Defendant Alverado is the president of defendant Darel Group, a Florida corporation that acts as a vessel agent for ships entering Florida in connection with Caribbean commerce. [Plaintiff 56.1 Statement ¶ 2; Defendant's Opposition ¶ 8].

---

1. Throughout their papers, the parties refer to defendant "Freddy Alverado" (as it appears in the caption) as various permutations of "Freddy," "Fredy," "Alverado," and "Alvarado." For consistency's sake, I will use defendant's name as it appears in the caption.

2. Defendants title their filing a "Motion for Final Summary Judgment." They do not specify under which of the Federal Rules of Civil Procedure they bring their motion. Though their title implies they move for summary judgment under Rule 56, I assume that they move to dismiss under Rule 12(b)(1).

Darel Group was the principal on a bond in the amount of $100,000 that Lumbermens executed in July of 1999. [Plaintiff 56.1 Statement ¶ 4]. The bond incorporates by reference the conditions set forth in 19 C.F.R. § 113.64, the provision of the Code of Federal Regulations that addresses "international carrier bonds." [Amended Cmplt., Ex. A]. Section 113.64 provides: "If any vessel, vehicle, or aircraft, or any master, owner, or person in charge of a vessel, vehicle or aircraft incurs penalty, duty, tax or other charge provided by law or regulation the obligors (principal and surety, jointly and severally) agree to pay the sum upon demand by Customs." 19 C.F.R. § 113.64.

In addition, Darel Group and Alverado[3] executed an indemnity agreement with Lumbermens. Under the indemnity agreement, defendants agreed:

> To indemnify and save harmless [Lumbermens] from and against any and all liability, claim, demand, loss, damage, expense, cost, attorney's fees and expenses, included without limitation, fees and disbursements of counsel incurred by [Lumbermens] and any third party, which [Lumbermens] shall at any time incur by reason of its execution of any bond or its payment of or its liability to pay any claim, irrespective of whether the claim is made against [Lumbermens] as a joint or several obligee and whether [Darel Group] is then liable to make such payment, and to place [Lumbermens] in funds to meet all its liability under any bond, promptly upon request and before [Lumbermens] may be required to make any payment thereunder; and copy of the claim, demand, voucher or other evidence of the payment by [Lumbermens] of any liability, claim, demand, loss, damage, expense,

cost and attorney's fees, shall be prima facie evidence of the fact and amount of [Darel Group's] liability to [Lumbermens] under this agreement. Any demand upon [Lumbermens] by [the United States] shall be sufficient to conclude that liability exists and [Darel Group] shall then place [Lumbermens] with sufficient funds in a form and amount deemed acceptable in [Lumbermens's] sole discretion, as collateral security to cover the liability.

[Amended Cmplt., Ex. B]. The indemnity agreement, dated July 9, 1999, predates the bond, which was executed on July 19 and became effective July 30, 1999. [Amended Cmplt., Ex. A].

On July 10, 2001, Lumbermens received formal demands from U.S. Customs ("Customs") for payment of $335,200 against the bond it executed on behalf of Darel Group. [Barther Aff. ¶ 9, Ex. 2]. Customs based this demand on civil penalties it assessed against Darel Group, pursuant to 19 U.S.C. §§ 1584(A)(1)-(2), for Darel Group's failure to manifest cocaine that the authorities discovered on a vessel for which Darel Group acted as the shipping agent. [Barther Aff. 10, Ex. 3].

Darel Group filed petitions with Customs contesting the penalties, and customs found defendant's petitions to be without merit. [Barther Aff. ¶ 11, Ex. 4]. Consequently, on March 19, 2002, Customs issued a formal demand to Lumbermens and Darel Group for payment of the statutory penal limit ($200,000) in lieu of litigation. [Barther Aff. ¶ 11, Ex. 3]. During the course of these events, Lumbermens requested that Darel Group pay the formal demands. [Plaintiff 56.1 Statement ¶ 8].

---

**3.** Alverado signed the agreement in both his individual capacity and as president of Darel Group. [Amended Cmplt. Ex. B].

Darel Group never paid Customs nor did it pay Lumbermens collateral for any payments plaintiff might make. [Plaintiff 56.1 Statement ¶ 8; Barther Aff. ¶ 13]. Lumbermens then received a letter from Customs, on June 3, 2002, demanding full payment of the $200,000 by June 10, 2002. [Barther Aff. ¶ 12, Ex. 4]. On June 10, 2002, Lumbermens paid the sum of $200,000 to the United States on behalf of Darel Group. [Barther Aff. ¶ 14; Amended Cmplt., Ex. D]. Plaintiff now seeks to recover that sum from defendants pursuant to the indemnity agreement.

## DISCUSSION

### I. Defendants' Motion to Dismiss is Denied

■ I first address defendants' motion to dismiss for lack of subject matter jurisdiction, because success on that motion would obviate plaintiff's motion for summary judgment. Defendants argue that subject matter jurisdiction does not exist because this suit is not an "action on a bond executed under any law of the United States" pursuant to 28 U.S.C. § 1352. Were subject matter jurisdiction to rest solely on 28 U.S.C. § 1352, defendants' argument might have merit under the Second Circuit's decision in *Rader v. Manufacturers Cas. Ins. Co. of Philadelphia*, 242 F.2d 419 (2d Cir.1957). *Rader* is irrelevant, however, because diversity jurisdiction exists under 28 U.S.C. § 1332. Lumbermens (an Illinois corporation with its principal place of business in New York) sues Darel Group (a Florida corporation with its principal place of business in Florida) and Alverado (a Florida resident).[4]

### II. Plaintiff's Motion for Summary Judgment is Granted

#### A. Summary Judgment Standard

A party is entitled to summary judgment when there is no "genuine issue of material fact" and the undisputed facts warrant judgment for the moving party as a matter of law. Fed.R.Civ.P. 56(c); *Anderson v. Liberty Lobby, Inc.*, 477 U.S. 242, 106 S.Ct. 2505, 91 L.Ed.2d 202 (1986). When considering a motion for summary judgment, "the court must view the evidence in the light most favorable to the party against whom summary judgment is sought and must draw all reasonable inferences in [its] favor." *Matsushita Elec. Indus. Co. Ltd. v. Zenith Radio Corp.*, 475 U.S. 574, 587, 106 S.Ct. 1348, 89 L.Ed.2d 538 (1986).

The moving party has the initial burden of demonstrating the absence of a disputed issue of material fact. *Celotex v. Catrett*, 477 U.S. 317, 323, 106 S.Ct. 2548, 91 L.Ed.2d 265 (1986). Once the moving party has made such a showing, the non-moving party must present "specific facts showing that there is a genuine issue for trial." Fed.R.Civ.P. 56(e). The party opposing summary judgment "may not rely on conclusory allegations or unsubstantiated speculation." *Scotto v. Almenas*, 143 F.3d 105, 114 (2d Cir.1998). Moreover, not every disputed factual issue is material in light of the substantive law that governs the case. "Only disputes over facts that might affect the outcome of the suit under the governing law will properly preclude summary judgment." *Anderson*, 477 U.S. at 248, 106 S.Ct. 2505.

---

**4.** Plaintiff's amended complaint indicates that Lumbermens is licensed to do business as a surety in New York and maintains offices in New York, and that Darel Group has an office for the conduct of business in Florida. [Amended Cmplt. ¶¶ 3, 5]. I take this to mean that New York and Florida are their respective principal places of business.

## B. The Parties' Contentions

Lumbermens' Amended Complaint contains four causes of action. Two of them (the first and third) involve relatively simple matters of contract law—plaintiff alleges that Darel Group and Alverado breached the indemnity agreement that they entered into with Lumbermens by failing to indemnify it for the $200,000 plaintiff paid to Customs. The third cause of action apparently alleges that Darel Group owes plaintiff $200,000 pursuant to the terms of the bond (as opposed to the indemnity agreement). Plaintiff's final cause of action alleges that plaintiff is entitled to attorney's fees pursuant to the indemnity agreement.

Defendants' response to Lumbermens' summary judgment motion is twofold. First, they argue that Lumbermens fraudulently induced them to purchase the bond. [Defendant's Opposition ¶ 11]. They contend that Lumbermens' actions (or lack thereof) made them think that they were simply purchasing "errors and omissions" insurance and they relied on those representations when they purchased the bond. Second, they argue that Lumbermens acted in bad faith when it paid Customs $200,000 in penalties. [Defendant's Opposition ¶ 25].

## C. Defendants' Affirmative Defenses

■ As a preliminary matter, I must determine—though neither party addresses the issue—what jurisdiction's law applies. I find that New York law applies for two reasons. First, if the parties' briefs assume that New York law controls, such "implied consent ... is sufficient to establish choice of law." *Krumme v. WestPoint Stevens Inc.*, 238 F.3d 133, 138 (2d Cir.2000) (quoting *In Matter of Arbitration between Tehran–Berkeley Civil & Environmental Engineers and Tippetts–Abbett–McCarthy–Stratton*, 888 F.2d 239, 242 (2d Cir.2000)). Plaintiff's initial mo-

tion for summary judgment assumes that New York law applies. Defendants' response brief cites two cases—one that applies Virginia law and one that applies Pennsylvania law. Since nothing in the record indicates that either of those jurisdictions' laws could feasibly apply here, I take defendants' response as implicit consent that New York law applies.

Second, and more importantly, the indemnity agreement here states: "It is mutually agreed that this contract is deemed made in the State of New York ... and the rights and liabilities of the parties determined, in accordance with the laws of the State of New York." [Amended Cmplt., Ex. B]. "As a general rule, choice of law provisions ... are valid and enforceable in [New York]." *Terwilliger v. Terwilliger*, 206 F.3d 240, 245 (2d Cir.2000) (quoting *Marine Midland Bank, N.A. v. United Missouri Bank, N.A.*, 223 A.D.2d 119, 122–23, 643 N.Y.S.2d 528, 530 (1st Dep't 1996)).

■ Under New York law, the existence of a genuine issue of material fact as to either of defendants' affirmative defenses would preclude summary judgment in plaintiff's favor. First, where a party is fraudulently induced to enter into a contract, the contract is voidable at the instance of the defrauded party. *See Sphere Drake Ins. Ltd. v. Clarendon Nat. Ins. Co.*, 263 F.3d 26, 31 (2d Cir.2001) (citing *Mix v. Neff*, 99 A.D.2d 180, 183, 473 N.Y.S.2d 31, 33 (3d Dep't 1984)); *Bazzano v. L'Oreal, S.A.*, 1996 WL 254873, at *3 (S.D.N.Y. May 14, 1996) (collecting cases). Similarly, an indemnity agreement executed in conjunction with a bond does not render a principal liable to a surety for payments the surety made in bad faith. *See International Fidelity Insurance Co. v. Spadafina*, 192 A.D.2d 637, 639, 596 N.Y.S.2d 453, 454–55 (2d Dep't 1993). I address defendants' arguments in turn.

## 1. Fraud

Defendants do not cite a single legal authority to support their fraudulent inducement argument. Rather, they rely solely on the affidavit of Freddy Alverado. In that affidavit, Alverado states that Lumbermens' agent approached Darel Group to sell to them "errors and omissions insurance for mistakes made by Darel as a ship's agent," [Alverado Aff. ¶ 5]; defendants thought that the bond Lumbermens sold them was "merely to cover clerical errors and other agency errors in the process of entering and clearing vessels in Miami," *id.* at ¶ 6; Lumbermens never told defendants that their bond would be "subject to forfeiture or the imposition of penalties due to the criminal conduct of third parties," *id.* at ¶ 7; and defendants relied on the advice and representations of Lumbermens, who selected the type of bond that Darel Group ultimately purchased. *Id.* at ¶ 14. In addition, Alverado contends that Lumbermens had a duty to warn defendants that (1) the bond "was not designed to cover the errors and omissions of a ships agency," *id.* at ¶ 13; (2) "[p]laintiff was selling Darel the wrong type of bond for its business," *id.* at ¶ 11; and (3) "a common carrier bond could be called for the acts or omissions of third parties." Id. at ¶ 12.

I read Alverado's affidavit as putting forward two separate fraud claims. First, defendants seem to be arguing that Lumbermens affirmatively misrepresented to them that the bond it executed for defendants covered only "clerical errors and other agency errors in the process of entering and clearing vessels in Miami." In other words, defendants claim that Lumbermens induced them to enter into the bond and indemnity agreement by fraudulently representing the nature of the bond. Second, defendants seem to argue that Lumbermens breached a duty by failing to adequately inform them of the nature of the bond. The former is a claim of fraudulent inducement, the latter is a claim of fraudulent concealment. *See Nasik Breeding & Research Farm Ltd. v. Merck & Co., Inc.*, 165 F.Supp.2d 514, 528 (S.D.N.Y. 2001); *Congress Financial Corp. v. John Morrell & Co.*, 790 F.Supp. 459, 469–474 (S.D.N.Y.1992).

To prove fraudulent inducement under New York law, a plaintiff must show: "(i) the defendant made a material false representation, (ii) the defendant intended to defraud the plaintiff thereby, (iii) the plaintiff reasonably relied upon the representation, and (iv) the plaintiff suffered damage as a result of such reliance." *Nasik*, 165 F.Supp.2d at 528; *see also Wells Fargo Bank Northwest, N.A. v. Taca International Airlines, S.A.*, 247 F.Supp.2d 352, 363–64 (S.D.N.Y.2002) (collecting cases). "To establish fraudulent concealment, a plaintiff must also prove that the defendant had a duty to disclose the material information." *Banque Arabe et Internationale D'Investissement v. Maryland National Bank*, 57 F.3d 146, 153 (2d Cir.1995).

The affidavit, interpreted most favorably to defendants, shows that Lumbermens made a material false representation (it told defendants that the bond insured them against "clerical mistakes"); Lumbermens intended to defraud defendants (it told defendants that the bond insured them against "clerical mistakes" so that they would buy the international carrier bond); defendants relied on the representation (they believed Lumbermans and entered into the bond agreement); and they suffered damage due to that reliance (Customs made a demand against the bond that they would not have been liable for under a bond for "clerical mistakes").

Lumbermens response to defendants' "argument"—that is, the Alverado affidavit—is that it is "simply not credi-

ble." [Plaintiff's Reply 3]. Of course, I may not evaluate Alverado's credibility in this motion for summary judgment—that is for a jury to do. What I understand Lumbermens to be arguing, however—though it by no means puts it in these terms (like defendants it cites no cases concerning fraud in the inducement)—is that no reasonable jury could find that defendants' reliance was *reasonable* (or "justifiable," as some courts put it).

"Where the representation relates to matters that are not peculiarly within the other party's knowledge and both parties have available the means of ascertaining the truth, New York courts have held that the complaining party should have discovered the facts and that any reliance under such circumstances would be unjustifiable" *Royal Am. Managers, Inc. v. IRC Holding Corp.,* 885 F.2d 1011, 1016 (2d Cir.1989), *quoted in Lazard Freres & Co. v. Protective Life Ins. Co.,* 108 F.3d 1531, 1542 (2d Cir.1997). The information does not have to be available only to the allegedly inducing party, however, nor does the information have to be absolutely unknowable by the allegedly defrauded party before reliance can be deemed justified. *Lazard Freres,* 108 F.3d at 1542 n. 9. "Indeed some cases have imposed liability in situations in which plaintiff could have determined the truth with relatively modest investigation." *Mallis v. Bankers Trust Co.,* 615 F.2d 68, 80 (2d Cir.1980). In *Todd v. Pearl Woods, Inc.,* for example, the court found that plaintiff's reliance was justifiable where plaintiff could have discovered the facts by inspecting public records but the facts were "peculiarly within the knowledge of the defendants." 20 A.D.2d 911, 911, 248 N.Y.S.2d 975, 977 (N.Y.App. Div.1964), *aff'd* 15 N.Y.2d 817, 257 N.Y.S.2d 937, 205 N.E.2d 861 (1965).

Here, the undisputed facts establish that both parties had available the means of ascertaining the truth, and the knowledge was not peculiarly within Lumbermens' knowledge. Defendants executed a bond on a Customs Form 301. The bond incorporates by reference the conditions set forth in the Customs regulations at 19 C.F.R. § 113.64. That provision states: "If any vessel, vehicle, or aircraft, or any master, owner, or person in charge of a vessel, vehicle or aircraft incurs a penalty, duty, tax or other charge provided by law or regulation the obligors (principal [defendants] and surety [plaintiff], jointly and severally) agree to pay the sum upon demand by Customs." *Id.* at § 113.64(a). It also states: "The principal agrees to comply with all laws and Customs Regulations applicable to unloading, safekeeping, and disposition of merchandise, supplies, crew purchases, and other articles on board the vehicle, vessel, or aircraft." *Id.* at § 113.64(b).

While it is possible that Lumbermens had more experience with customs bonds than did defendants, it cannot be said that the terms of the bond were "peculiarly within" Lumbermens' knowledge. They appeared in the Code of Federal Regulations and were a matter of public record. The Custom Form 301 that defendants signed put them on notice that they may not have been executing a bond for "errors and omissions" insurance—the form clearly indicates that they were executing an "international carrier bond" (the term that appears on the form). Moreover, Alverado sent a letter to Customs (dated July 8, 1999) requesting "permission to file a continuous Customs Form 301 Bond for international [c]arrier." [Barther Aff., Ex. 1]. Defendants' knowledge that they were executing an "international carrier bond," coupled with the general availability of the terms contained in such a bond, render any reliance on Lumbermens' alleged representations that the bond was for "errors and omissions" unjustifiable as a matter of law. A modest amount of diligence on

defendants' part would have informed them what terms an international carrier bond contained.

In addition, defendants' contention that "[d]efendant Darel was not required to purchase and was not eligible to purchase a common carrier bond" is unavailing.. [Defendants' 56.1 Statement ¶ 1]. That is because the Customs regulations clearly require vessel agents to post an international carrier bond under certain circumstances. Plaintiff points out, for example, that a vessel agent must post an international carrier bond when he (or it) wants a ship to enter the United States at a point outside the limits of a Customs port (i.e., at a location other than a customhouse). *See* 19 C.F.R. § 4.3(b)(2). Customs apparently determined that defendants were required to post an international carrier bond pursuant to 19 C.F.R. § 4.30(c). [Barther Aff., Ex. 4]. I express no opinion concerning the merits of Customs' determination. I only note that the regulations directly contradict defendants' assertion that vessel agents are never required or eligible to purchase an international carrier bond.

### 2. Good Faith

■ "The general rule is that 'a surety is equitably entitled to full indemnity against the consequences of a principal obligor's default.'" *Pro–Specialties, Inc. v. Thomas Funding Corp.*, 812 F.2d 797, 799 (2d Cir.1987) (quoting *Leghorn v. Ross*, 384 N.Y.S.2d 830, 831, 53 A.D.2d 560 (1st Dep't 1976), *aff'd on other grounds*, 42 N.Y.2d 1043, 399 N.Y.S.2d 206, 369 N.E.2d 763 (1977)). A surety and principal may alter this equitable default through express contract. *Id.*

The indemnity agreement between plaintiff and defendant provides that "copy of the claim, demand, voucher or other evidence of the payment by [Lumbermens] of any liability, claim, demand, loss, dam-age, expense, cost and attorney's fees, shall be prima facie evidence of the fact and amount of [defendants'] liability to [Lumbermens] under this agreement." [Amended Cmplt. Ex. B]. New York courts have upheld such contractual provisions, and "payments made by sureties under such provisions are scrutinized only for good faith and reasonableness as to amount paid." *Acstar Ins. Co. v. Teton Enterprises, Inc.*, 670 N.Y.S.2d 588, 589, 248 A.D.2d 654, 654 (2d Dep't 1998) (citing *International Fidelity Insurance Co. v. Spadafina*, 192 A.D.2d 637, 596 N.Y.S.2d 453 (2d Dep't 1993)); *see also American Home Assur. Co. v. Gemma Const. Co., Inc.*, 713 N.Y.S.2d 48, 275 A.D.2d 616 (1st Dep't 2000).

■ As evidence of its good faith, Lumbermens provides a letter from Customs—sent in response to a letter from Lumbermens inquiring whether there was a "substantial question of law" as to the merits of defendants' penalties—indicating that Lumbermens must make payment by June 10, 2002. [Barther Aff., Ex. 4]. In response, defendants argue that "[a]fter the penalty was imposed, [Lumbermens] failed to contest the penalty and voluntarily tendered payment even though Darel had no responsibility for the criminal acts of third parties. [Lumbermens] acted in bad faith by failing to contest the unjustified demands of the United States Customs Service. Plaintiff acted in bad faith by ignoring the interest of its indemnitors." [Defendants' Opposition ¶ 25].

These assertions are purely conclusory. And, of course, "[c]onclusory allegations of bad faith are insufficient to defeat a motion for summary judgment in favor of a surety seeking to enforce an indemnification agreement." *General Accident Insur. Co. of America v. Merritt–Meridian Construction Corp.*, 975 F.Supp. 511, 518 (S.D.N.Y.1997); *see also Banque Natinale*

*de Paris S.A. Dublin Branch v. Insurance Company of North America,* 896 F.Supp. 163, 164–65 (S.D.N.Y.1995) ("There is not a scintilla of evidence, as distinct from conclusory assertions, that [the surety] acted inappropriately. Indeed it was obviously in [the surety's] economic interest to press the alleged defenses for all they were worth, as the ... defendants' failure to post collateral meant that [the surety's] own funds were at risk.").[5]

### D. Defendants' Liability Under the Indemnity Agreement

 Because defendants' "fraud" and "good faith" arguments do not create a genuine issue of material fact as to the validity of the indemnity agreement, I now turn to whether they are liable under the terms of the agreement. "[I]n a contract dispute, summary judgment will be awarded only where the language of the contract is unambiguous." *Nowak v. Ironworkers Local 6 Pension Fund,* 81 F.3d 1182, 1192 (2d Cir.1996). "Contract terms are ambiguous if they are capable of more than one meaning when viewed objectively by a reasonably intelligent person who has examined the context of the entire integrated agreement and who is cognizant of the customs, practices, usages and terminology as generally understood in the particular trade or business." *Id.* (quoting *Sayers v. Rochester Tel. Corp.,* 7 F.3d 1091, 1094 (2d Cir.1993)). Conversely, "[w]hen the relevant language has 'a definite and precise meaning, unattended by danger of misconception in the purport of the [contract] itself, and concerning which there is no reasonable basis for a difference of opinion,' no ambiguity exists." *Id.* (quoting *Breed v. Ins. Co. of North America,* 46

N.Y.2d 351, 355, 413 N.Y.S.2d 352, 355, 385 N.E.2d 1280 (1978)).

The indemnity agreement in this case is virtually identical to the one Judge Brieant interpreted in *American Motorists Insurance Co. v. Pennsylvania Beads Corp.,* 983 F.Supp. 437 (S.D.N.Y.1997). In that case, the parties executed a "basic importation and entry" bond that incorporated the provisions 19 C.F.R. § 113.62, as well as an indemnity agreement. Customs made a demand against the bond; plaintiff surety demanded that defendant post $100,000 as collateral security; defendant refused to post such security; and plaintiff sued to compel defendant to post the money. Judge Brieant found the indemnity agreement to be "both clear and precise." *Id.* at 440. *See also American Motorists Ins. Co. v. United Furnace Co., Inc.,* 876 F.2d 293, 299 (2d Cir.1989) (finding identical provision, requiring indemnitor to provide collateral security in the event that the United States makes a demand upon surety, to be unambiguous).

This case does not involve the "collateral security" clause of the indemnity agreement. Rather, plaintiffs seek payment pursuant to the clause that requires defendants to "indemnify and save harmless [Lumbermens] from and against any and all liability, claim, demand, loss, damage, expense, cost, attorney's fees and expenses ... which [Lumbermens] shall at any time incur by reason of its execution of any bond or its payment of or its liability to pay any claim, irrespective of whether the claim is made against [Lumbermens] as a joint or several obligee and whether [Darel Group] is then liable to make such payment." This provision is as unambiguous

5. I note that the two cases that defendants cite in their entire opposition to plaintiff's motion for summary judgment are entirely consistent with my conclusion. *See Fidelity & Deposit Co. of Maryland v. Bristol Steel & Iron*

*Works, Inc.,* 722 F.2d 1160, 1163 (4th Cir. 1983); *Fidelity & Guaranty Co. v. Feibus,* 15 F.Supp.2d 579 (M.D.Pa.1998). I forgo an analysis of those cases because they do not involve applications of New York law.

as the "collateral security" provision. It clearly provides that defendants agree to reimburse Lumbermens for any payments it makes pursuant to its joint and several liability under the bond.

### E. Attorneys' Fees

The indemnity agreements provides that defendants are required to indemnify plaintiff for "any and all . . . attorney's fees and expenses, included without limitation, fees and disbursements of counsel incurred by [Lumbermens] in any action or proceeding between [defendants] and [Lumbermen]." [Amended Cmplt., Ex. B]. Like Judge Brieant, who analyzed a nearly identical provision in *American Motorists Insurance Co.*, I find this language to be "clear." 983 F.Supp. at 442.

Plaintiff has ten days from the date of this decision to file an accounting of all attorneys' fees claimed. Defendants have ten days thereafter to object to any fees claimed. The Court will enter judgment as soon as the amount of fees can be resolved.

### CONCLUSION

For the reasons stated above, defendants' motion to dismiss is denied and plaintiff's motion for summary judgment is granted.

This is the decision and order of the Court.