OPINION OF THE COURT
Charles J. Markey, J.
*883 Education Law § 6602 states: “Only a person licensed or otherwise authorized to practice under this article shall practice dentistry or use the title ‘dentist’.” The unique question posed by this decision, not encountered previously in New York’s case law, is whether the plaintiff, who allegedly sustained injuries to his teeth by the actions of an unlicensed dentist or imposter and who waited almost six years before bringing any action, can state a cause of action on a legal theory that carries a six-year statute of limitations.
The defendants have moved for an order (1) dismissing the complaint pursuant to CPLR 3211 (a) (5) and 214-a on statute of limitations grounds, and (2) dismissing the complaint pursuant to CPLR 3211 (a) (7) and 3013 for failure to state a cause of action.
The power of states to regulate professions is well grounded. The United States Supreme Court declared: “[T]here is no right to practice medicine which is not subordinate to the police power of the states” (Lambert v Yellowley, 272 US 581, 596 [1926], quoted with approval in Armstrong v North Carolina State Bd. of Dental Examiners, 129 NC App 153, 159, 499 SE2d 462, 468 [1998] [reversing trial court, appellate court upheld suspension of dentist who hired another dentist who was unlicensed to practice in the state of North Carolina]). By amendments that became effective during 2007, New York fortified article 133 of the Education Law, governing “Dentistry and Dental Hygiene,” in several important and progressive ways. The article sets forth an elaborate definition of dentistry (Education Law § 6601), imposes requirements to obtain a license as a dentist in New York (Education Law § 6604), mandates 60 hours of continuing education for dentists in each triennial period (Education Law § 6604-a), defines the practice of dental hygiene (Education Law § 6606) and provides the requirements for getting a license as a dental hygienist (Education Law § 6609), defines the practice of certified dental assisting (Education Law § 6608) and imposes requirements for certification as a certified dental assistant (Education Law § 6608-b), and, by statute, immunizes persons and entities from a defamation action regarding the qualifications of a dentist, or lack thereof, when reported to a governmental society, hospital, or dented society, unless both falsehood and malicious intent can be demonstrated (Education Law § 6611 [9]). The overall policy, gauged by a plain reading of the sections in Education Law article 133, reveals an intent to protect the public from bodily harm. The Legislature obviously saw a need *884 to strengthen the laws in order to protect the public from the unbounded rapacity of ruthless individuals, who, without skill and license in the profession of dentistry, would go so far as to imperil a patient’s life and to destroy his or her teeth. As ably stated by the court in Nugent v Stokes (313 Ky 131, 133, 230 SW2d 609, 610 [1950]): “It is a well-known fact that modern methods of treatment of those needing the services of a dentist require great skill and those entrusted with this skill should be qualified for the purpose, and it is the intention of the statutes to require this.”
Some skeptical and cynical commentators question licensing requirements. In a recent opinion column published in the Wall Street Journal, a well-respected newspaper known for promoting conservative, free enterprise policies, two scholars, Charles Wheelan and Morris Kleiner, state: “Licensure has . . . basic problems. First, any kind of regulation makes it harder to enter a profession; that’s the point of it. But restricting entry raises the cost of service, which means that some people will either skip the service or try to do it themselves.” (We Don’t Need a Mortgage Guild, Wall Street Journal, Mar. 24, 2008, at A14, col 3.)
A study of dentists by Morris Kleiner and Robert Kudrle of the University of Minnesota in 2000 found that more stringent state licensing requirements had no impact on the dental health of a national sample of patients (Air Force recruits), or of the general population — but it did raise prices and the earnings of dentists. States with more rigorous requirements may have better dentists, but some people cannot afford to have their teeth fixed (id.).
Indeed, in the present case, plaintiff Jose Adames maintains that he was trying to save money when he hired defendant Rafael Nino Velasquez, whom he believed to be a licensed dentist, to work on his teeth. Even aside from his sworn affidavit in opposition to the defendants’ motion to dismiss, Adames’s recitals in the complaint are deemed to be true for purposes of this motion to dismiss (Nonnon v City of New York, 9 NY3d 825 [2007]; Wieder v Skala, 80 NY2d 628, 631 [1992]; Rovello v Orofino Realty Co., 40 NY2d 633 [1976]; see Operative Cake Corp. v Nassour, 21 AD3d 1020 [2d Dept 2005]).
Adames allegedly met defendant Velasquez prior to November 15, 2001, who falsely represented that he was a dentist. Upon learning that Adames had dental problems, Velasquez offered his services at a rate discounted from that charged by his wife, *885 defendant Dr. Ketly Nino, sued herein as Kelly Nino and Kathy Nino, who is a dentist, provided the plaintiff went to the office at night. On or about November 15, 2001, Adames went to the office located at 184-02 Hillside Avenue, Jamaica, New York, where he agreed to pay Velasquez in cash at each visit for all services then provided. On that evening and for several evenings thereafter, defendant Velasquez filled cavities in about 11 of the plaintiffs teeth, receiving cash for his work. Velasquez must have thought highly of his own abilities because, according to Adames, he took no X rays of Adames’s teeth before undertaking the massive dental work.
After experiencing pain in the teeth that defendant Velasquez had treated, Adames sought care from several dentists, one of whom informed him that Velasquez had filled the cavities improperly. Adames’s teeth are sensitive to hot and cold temperatures, and licensed dentists have reportedly subsequently advised him that he may lose his teeth as a consequence of Velasquez’s shoddy dental work. In or about October 2004, Adames’s neighbors advised him that defendant Velasquez is not a dentist and does not hold a license to practice dentistry. Defendant Velasquez is a lab technician. Defendant Nino and defendant Dental Care, who employed defendant Velasquez, permitted him to falsely represent himself to be a licensed dentist.
Defendant Ketly F. Nino, D.D.S. submitted an affidavit in support of the motion to dismiss, swearing that Adames never received any dental care or treatment from her, Velasquez, or Dental Care. To reiterate the point, on January 28, 2008, over a month after the submission of the motion papers, defense counsel sent to the court the affidavit of defendant Velasquez, also vigorously denying Adames’s allegations and denying that Adames received any dental care or treatment from him or any of the other defendants.
On or about May 23, 2007, about 5V2 years after Velasquez performed his dental “services,” Adames commenced this action against defendants Velasquez, Nino, and Dental Care, allegedly a partnership or a corporation. The complaint is an example of poor draftsmanship, and plaintiffs counsel, in opposing this motion to dismiss, rather than react defensively, commendably concedes the point. Separate causes of action are not separately stated and numbered (see CPLR 3014; David J. Cogan Mgt. Co. v Lipset, 79 AD2d 918 [1st Dept 1981]), and the paragraphs are often a jumble of allegations. Within the *886 framework of only two causes of action, plaintiff offers a smorgasbord of numerous legal theories, whose necessary legal elements are thrown in desultory and disjointed fashion. The first cause of action is for negligence, medical malpractice, and fraud. The second cause of action is for breach of contract and fraud.
This is a case of first impression in this state. The court has not been informed of any cases arising in New York where an individual injured by another engaged in the unlicensed practice of dentistry has brought a civil action for damages. However, several relatively old New York cases where plaintiffs have brought actions for injuries based on the practice of medicine by unlicensed health care practitioners do exist (see 76 NY Jur 2d, Malpractice § 115), and other cases have been brought in other jurisdictions (see 61 Am Jur 2d, Physicians, Surgeons, and Other Healers § 210).
In Brown v Shyne (242 NY 176 [1926]), the plaintiff sought treatment for her disease or physical condition from a chiropractor who had no license to practice medicine. The plaintiff sued, claiming that the treatment resulted in her paralysis. The New York Court of Appeals, viewing the case as sounding in negligence or malpractice, held that if the violation of a statute prohibiting the unlicensed practice of medicine was the proximate cause of her injury, she could recover damages.
“In order to show that the plaintiff has been injured by defendant’s breach of the statutory duty, proof must be given that defendant in such treatment did not exercise the care and skill which would have been exercised by qualified practitioners within the State, and that such lack of skill and care caused the injury” (Brown v Shyne, 242 NY at 181).
Hoffson v Orentreich (168 AD2d 243 [1st Dept 1990]) was an action for medical malpractice and negligence arising from the scarring of a patient’s face allegedly caused by a procedure performed by a registered nurse. The Appellate Division held that the trial court did not commit error when it charged the jury, concerning sections of the Education Law, that it had to decide whether the nurse “acted in accordance with proper nursing standards or engaged in the practice of medicine without a license” (id. at 245). Cases arising in New York and other jurisdictions show that individuals injured by others engaged in the unlicensed practice of medicine have sued on a variety of grounds, such as negligence and malpractice (see An *887 notation, Liability to Patient for Results of Medical or Surgical Treatment by One Not Licensed as Required by Law, 57 ALR 978) and even fraud (see e.g. Stevens v Superior Ct., 180 Cal App 3d 605, 225 Cal Rptr 624 [Ct App 2d Dist], review denied [1986]; Harris v Graham, 124 Okla 196, 255 P 710 [1926]).
Turning to the complaint brought by Adames, a cause of action for personal injury based on negligence is controlled by CPLR 214 (5), a three-year statute of limitations (see Snyder v Town Insulation, 81 NY2d 429 [1993]; Bleiler v Bodnar, 65 NY2d 65 [1985]; Paladino v Time Warner Cable of N.Y. City, 16 AD3d 646 [2d Dept 2005]; Harley v Druzba, 169 AD2d 1001 [3d Dept 1991]). A cause of action for medical malpractice is controlled by CPLR 214-a, a two-year-and-six-month statute of limitations (see Morales v Carcione, 48 AD3d 648 [2d Dept 2008]; Sarjoo v New York City Health & Hosps. Corp., 309 AD2d 34 [1st Dept 2003], Iv denied 1 NY3d 506 [2004]; Doyaga v Columbia-Presbyterian Med. Ctr., 307 AD2d 333 [2d Dept 2003]). The statute of limitations on the plaintiffs causes of action for negligence began to run in or about November 2001, the date of injury (see Snyder v Town Insulation, 81 NY2d 429 [1993]; Paladino v Time Warner Cable of N.Y. City, 16 AD3d 646 [2005]), and the statute of limitations on the plaintiffs causes of action for medical malpractice also began to run in or about November 2001, the date of the alleged wrongful conduct (see Massie v Crawford, 78 NY2d 516 [1991]; Nykorchuck v Henriques, 78 NY2d 255 [1991]). The plaintiff did not bring this action until on or about May 23, 2007, approximately SVs years later. The court notes that the continuous treatment doctrine, pursuant to which the running of the statute of limitations for medical and dental malpractice is stayed until the end of a course of treatment for the condition that gives rise to the lawsuit (see Nykorchuck v Henriques, 78 NY2d 255 [1991]; McDermott v Torre, 56 NY2d 399 [1982]; Iazzetta v Vicenzi, 200 AD2d 209 [3d Dept 1994] [dental], Iv dismissed 85 NY2d 857 [1995]), does not apply in the case at bar.
An interesting issue, with which another court will have to wrestle, is whether the medical statute of limitations would be available to an alleged unlicensed dental impostor where the actions occurred after CPLR 214-a’s two-year-and-six-month limitations period for medical or dental malpractice, but before CPLR 214 (5)’s three-year limitations period for negligence. Specifically, provided that all parties do not dispute that an impostor or unlicensed dentist provided dental services, the issue *888 would be whether or not an unlicensed dentist should be permitted to be shielded by the shorter medical/dental statute of limitations set forth in CPLR 214-a. Such a question need not be addressed by this decision since the plaintiff failed to file suit for many years after both the medical/dental malpractice and negligence limitations periods had expired.
Accordingly, those branches of the motion seeking an order pursuant to CPLR 3211 (a) (5) dismissing the causes of action for negligence and medical malpractice on statute of limitations grounds are granted.
In regard to the causes of action for breach of contract, CPLR 213 (2), a six-year statute of limitations, controls (see Gibraltar Mgt. Co., Inc. v Grand Entrance Gates, Ltd., 46 AD3d 747 [2d Dept 2007]), and the causes of action began to run from the time of the breach in November 2001 (see Mainline Elec. Corp. v East Quogue Union Free School Dist., 46 AD3d 859 [2d Dept 2007]). Although the purported claims for breach of contract are timely asserted, the plaintiff has failed to adequately state causes of action for breach of contract against defendant Ketly Nino and the defendant businesses. “A cause of action to recover damages for breach of contract based on medical services rendered by a physician is legally sufficient only when that cause of action is based upon an express special promise to effect a cure or accomplish a definite result” (Varone v Delman, 272 AD2d 320 [2d Dept 2000]; see Nicoleau v Brookhaven Mem. Hosp. Ctr., 201 AD2d 544 [2d Dept 1994]). “A breach of contract claim in relation to the rendition of medical or dental services by a physician or dentist will withstand a test of its legal sufficiency only when based upon an express special promise to effect a cure or accomplish some definite result” (Clarke v Mikail, 238 AD2d 538, 538 [2d Dept 1997] [dentist]; accord Iazzetta v Vicenzi, 200 AD2d 209 [1994] [dentist]; Blum v Yuabov, 12 Misc 3d 139[A], 2006 NY Slip Op 51333[U] [App Term, 2d Dept 2006] [dentist]).
 In the present case, Adames does not allege that a special promise was made to him, and the causes of action for breach of contract asserted against defendant Dr. Nino and her business known as “Dental Care,” allegedly an individual proprietorship or partnership, or “Dental Care, Inc.,” are insufficient for that reason. Indeed, Adames could hardly have formed a contract with Nino, since he was enticed to make a private arrangement, in stealth, with Velasquez, her husband. The aforementioned rule concerning a promise to effect a cure *889 or a particular result has no application to a nonprofessional such as defendant Velasquez, who is not a dentist, yet agrees to render dental services. Adames has adequately stated the ordinary elements of a cause of action for breach of contract against defendant Velasquez (see Furia v Furia, 116 AD2d 694 [2d Dept 1986]; WorldCom, Inc. v Sandoval, 182 Misc 2d 1021 [Sup Ct, NY County 1999]; Lehmann v Lehmann, 182 Misc 2d 22 [Civ Ct, Kings County 1999]).
Accordingly, those branches of the motion which are for an order, pursuant to CPLR 3211 (a) (5), dismissing the causes of action for breach of contract on statute of limitations grounds are denied.
Those branches of the motion seeking an order, pursuant to CPLR 3211 (a) (7), dismissing the causes of action for breach of contract as insufficiently stated are granted as to defendant Nino and the defendant businesses, but are denied as to defendant Velasquez.
Turning to the causes of action for fraud, CPLR 213 (8), a six-year statute of limitations, controls (see Giarratano v Silver, 46 AD3d 1053 [3d Dept 2007]; Oggioni v Oggioni, 46 AD3d 646 [2d Dept 2007]), and Adames has timely asserted his claims for fraud. Adames has also adequately pleaded the elements of a cause of action for fraud against defendant Velasquez by alleging that (1) defendant Velasquez made material representations that were false or concealed a material existing fact, (2) defendant Velasquez knew the representations were false and made them with the intent to deceive the plaintiff, (3) the plaintiff was deceived, (4) the plaintiff justifiably relied on the representations made by defendant Velasquez, and (5) the plaintiff was injured as a result of the representations made by defendant Velasquez (see Lama Holding Co. v Smith Barney, 88 NY2d 413 [1996]; New York Univ. v Continental Ins. Co., 87 NY2d 308 [1995]; Watson v Pascal, 27 AD3d 459 [2d Dept 2006]; Cerabono v Price, 7 AD3d 479 [2d Dept 2004]; New York City Tr. Auth. v Morris J. Eisen, P.C., 276 AD2d 78 [1st Dept 2000]; American Home Assur. Co. v Gemma Constr. Co., 275 AD2d 616 [1st Dept 2000]; Swersky v Dreyer & Traub, 219 AD2d 321 [1st Dept 1996]).
In Batty v Arizona State Dental Bd. (57 Ariz 239, 112 P2d 870 [1941]), the Supreme Court of Arizona beautifully articulated the nature of the fraud and deception, stating:
“The purpose and the only justification of the various statutes regulating the practice of medicine in *890 its different branches is to protect the public against those who are not properly qualified to engage in the healing art, and one who is not licensed under such statutes is conclusively presumed to be unqualified. When a patient employs a physician he has the right to assume the latter will advise him properly in all matters pertaining to his ailments, and this certainly includes advice as to who are properly qualified to assist in his treatment. Fraud may be committed by a failure to speak, when the duty of speaking is imposed, as much as by speaking falsely.” (57 Ariz at 254, 112 P2d at 877; State Dental Council & Examining Bd. v Pollock, 457 Pa 264, 274 n 6, 318 A2d 910, 916 n 6 [1974] [“(I)t is a fraud on members of the public who expect and pay for the services of a licensed dentist”].)
In the present case, Adames’s account that Velasquez insisted on cash shows a mercenary motive. As a matter of law, an action for fraud may be asserted regardless of whether Velasquez accepted remuneration for his offered “services” (see e.g. Lewis v Kentucky State Bd. of Dental Examiners, 300 SW2d 241, 244 [Ky Ct App 1957] [well-intentioned and charitable unlicensed dentist, engaged in training religious missionaries in “practical dentistry,” was barred from doing so; court stated: “Nor can we accept the appellant’s proposition that the statutes are only aimed at masqueraders and quacks who prey upon the public for compensation”]).
Pursuant to the doctrine of respondeat superior (see Sports Car Ctr. of Syracuse v Bombard, 249 AD2d 988 [4th Dept 1998]; Ellis v Metlife Sec. Ins. Co. of N.Y., 130 AD2d 951 [4th Dept 1987]), Adames has also adequately stated a cause of action for fraud against defendant Nino and the defendant businesses by alleging, inter alia, that defendant Velasquez was their employee who held himself out as a dentist, with their permission. If defendant Velasquez is found to have committed a fraud, liability could also attach to defendant Dr. Nino and the defendant businesses. In Armstrong v North Carolina State Bd. of Dental Examiners (129 NC App 153, 161, 499 SE2d 462, 469 [1998]), the appellate court eloquently stated:
“[T]he legislature could have reasonably believed that the statute would promote these ends by placing the burden to determine whether employees are properly licensed on the hiring dentist. Such an individual is in the best position to ensure that em *891 ployees are properly licensed, and it is not unreasonable or irrational to require a hiring dentist to ensure that employees are properly licensed. The Dental Board further argues that if due diligence is exercised by a dentist, then the dentist can insulate him or herself from liability.” (Accord Simpson v Hubert, 35 Mich App 523, 528 n 12, 193 NW2d 68, 71 n 12 [1971] [“(M)alpractice is not the exclusive theory” where a patient was harmed by the actions of an impostor, unlicensed dentist].)
As well expressed by the North Carolina appellate court in Armstrong, employers are in the best position to ensure that their employee professionals are properly licensed before they provide services to the public. Whether it is a dental practice hiring a dentist, a hospital hiring a doctor, or a law firm hiring an attorney, the firm’s administrator or managing director can easily check the licensing credentials of its employees and thus insulate the entity from liability on a fraud cause of action based upon a quack who masquerades as a licensed professional.
States, pursuant to their police powers, have rationally chosen certain professions for licensing requirements. Television news reporters, journalists, and theater, restaurant, art and music reviewers all require certain skills in written or oral presentations, coupled with an adept knowledge of their subject matter, and serve an important, even vital, societal function, but they are not obligated to be licensed, presumably because any error they make in reporting or critiquing is not a grave threat to the public. The work done by doctors, dentists, lawyers, and similar professionals, on the other hand, is of such nature that states must impose licensing requirements because the harm done by an unlicensed impostor can imperil lives, health, liberty, and fortunes.
A fraud cause of action needs to be available to protect the public as long as the inventiveness of con artists, pathological liars, and even simply greedy individuals continue to plague society. In the present case, a lab technician, as maintained by plaintiff, allegedly posed, masqueraded, and performed work as a dentist, although the imposter was unlicensed. Other reported cases have shown a dramatic surge in acts of deception and manipulation, by omission, concealment, and commission, by even licensed professionals. In Positive Software Solutions, Inc. v New Century Mtge. Corp. (337 F Supp 2d 862 [ND Tex 2004], affd as mod 436 F3d 495 [5th Cir 2006], revd on reh 476 F3d 278 *892 [5th Cir 2007, en banc, 11-5 op], cert denied 551 US —, 127 S Ct 2943 [2007]), lawyer Peter J. Shurn III, in undertaking to serve as the sole arbitrator of a major commercial dispute, made repeated false and misleading statements on disclosure forms. For instance, Shurn was asked on one form: “Have you had any professional or social relationship with counsel for any party in this proceeding or with the firms for which they work?” (436 F3d at 497 [panel opinion by Judge Thomas M. Reavley]). Shurn falsely insisted several times, and one time under written oath, that he had nothing to disclose (petition for a writ of certiorari, 2007 WL 1093508 [2007]). Despite an en banc ruling by the United States Court of Appeals for the Fifth Circuit refusing to overturn the arbitration result, over the powerful dissents of Judges Thomas M. Reavley and Jacques L. Wiener, Jr., Shurn’s deception on the form is a matter of record (see excellent discussion in Howard L. Wieder, Subversion of ADR: Nondisclosure of Ties by Appointed and Aspiring Arbitrators, 71 Queens B Bull [No. 3] 1 [Dec. 2007], http://www.qcba.org/associations/6652/ files/December%2007%20Bar%20Bul%201ores.pdf [accessed Apr. 29, 2008]).
Pulitzer Prize-winning economics and financial affairs commentator Gretchen Morgenson, in When Arbitrators Are Their Own Judges (New York Times, Aug. 12, 2007, Business section, at 1), discusses the case of Harley McDonald, a retired lawyer, and his wife, Carol, who had a retirement account valued at $60 million. Their investment advisers at Piper Jaffray gave advice that resulted in the nest egg losing 80% of its value. Unlike in Positive Software, in which the arbitration was heard by Shurn acting as a sole arbitrator, the McDonalds’ dispute was to be submitted to a panel of arbitrators. With only three to four days left to the start of the arbitration, the McDonalds’ lawyer discovered that the chairman of the panel, attorney Mark F. Marshall, failed to disclose that his law firm, Davenport, Evans, Hurwitz & Smith, in South Dakota, represented Piper, the defendant in the arbitration, on numerous, repeated occasions.
In those cases involving lawyers Shurn and Marshall, licensed professionals, false statements were made by lawyers for the purpose of serving as an arbitrator. Deception and concealment can also cost lives. Articles in the New York Times detailed how a plastic surgeon’s false representations about his credentials in a marketing piece and his failure to disclose that he was barred by New York authorities from performing nasal plastic surgeries without the supervision of another surgeon cost a woman from *893 Ireland her life (see Warren St. John, Face-Lift Played Major Part in Woman’s Death, City Finds, New York Times, May 25, 2005, at B5; Anthony Ramirez, Plastic Surgeon Sued By Dozens Surrenders His Medical License, New York Times, Mar. 7, 2008, at B2 [concerning former physician Michael Evan Sachs]).
In those cases, involving Shurn, Marshall, and Sachs, licensed professionals practiced deception, misrepresentation, and, above all, manipulative concealment of vital information that threatened fortunes and lives. Failure to provide a cause of action in fraud to victims of such treacherous concealment that results in harm invites, in effect, other miscreants to victimize other members of the public. Where a lab technician fails to inform a dental patient that he is not a dentist and then inflicts massive injuries, a fraud cause of action should similarly be made available to protect the public.
In this regard, upholding the cause of action for fraud, under the facts here stated, does not accomplish an end run on the general rule forbidding such cause of action where it serves merely to restate the claims for medical/dental malpractice or negligence (see e.g. Otero v Presbyterian Hosp. in City of NY., 240 AD2d 279, 280 [1st Dept 1997]; Tulloch v Haselo, 218 App Div 313 [3d Dept 1926] [rejecting fraud claim against dentist, as seeking an enhancement of damages]). The deception allegedly practiced by Velasquez, accepted as true for purposes of this motion to dismiss, and if found to be true by a jury, is a different act than negligently rendering dental services. In terms of the injury, the actions of a lab technician posing as a dentist and commencing to drill and to fill cavities, without even taking a set of X rays, will result in huge aggravated, compounded damage to the plaintiff. If the facts alleged by Adames are accepted at trial as true, both compensatory and punitive damages need to be available to redress the injuries and to deter anyone who thinks of embarking upon such a depraved scheme to harm the public.
Accordingly, those branches of the defendants’ motion which are for an order dismissing the causes of action for fraud are denied.
To summarize, those branches of the defendants’ motion seeking an order, pursuant to CPLR 3211 (a) (5), dismissing the causes of action for negligence and medical malpractice on statute of limitations grounds are granted. Those branches of the motion seeking an order, pursuant to CPLR 3211 (a) (5), dismissing the causes of action for breach of contract on statute *894 of limitations grounds are denied. Those branches of the motion which are for an order, pursuant to CPLR 3211 (a) (7), dismissing the causes of action for breach of contract as insufficiently stated are granted as to defendant Nino and the defendant businesses, but denied as to defendant Velasquez. The branches of the motion seeking to dismiss a fraud cause of action as against all defendants are denied.
In pursuit of the legislative policy expressed in Education Law article 133 and the reporting provision of section 6611 (9), this court, furthermore, without prejudging this case or making any determinations of the credibility of any of the parties, is sending copies of this decision to: (1) Honorable Richard P Mills, President of the University of the State of New York and Commissioner of Education; Mr. Lawrence H. Mokhiber, Acting Executive Secretary of the Division of Dentistry; Honorable Robert M. Bennett, Chancellor of the New York State Board of Regents; and Honorable Merryl H. Tisch, Vice-Chancellor of the New York State Board of Regents, for any investigative action that they and the New York State Education Department, at 89 Washington Avenue, Albany, New York 12234, may wish, in their discretion, to pursue regarding the individual and corporate defendants named herein, including whether Dr. Ketly E Nino aided and abetted the actions of an unlicensed dentist (Matter of Chall v New York State Bd. of Regents, 168 AD2d 706 [3d Dept 1990]), and (2) Honorable Richard A. Brown, District Attorney of Queens County, for any investigation he may wish to undertake. In light of the diametrically conflicting affidavits between Adames, who swears that he was treated by Velasquez, and defendant Velasquez, who denies ever treating Adames, the court hereby advises counsel for the parties that, if, in the course of proceedings and the trial of this case, it becomes clear that one or some parties have committed perjury, the undersigned will make a criminal referral to the District Attorney.
The court affords plaintiffs counsel an opportunity, if so advised, to serve an amended complaint that conforms to this decision and corrects the hodgepodge allegations of the present pleading. Such an amended pleading should be verified by the plaintiff, in light of the fraud cause of action, and should be served upon defense counsel on or before May 29, 2008. Defense counsel shall serve defendants’ answer on or before July 3, 2008.